UTICA MUTUAL INSURANCE COMPANY, Respondent, *v.* ALLEN R. CHERRY, Appellant, et al., Defendant.

Second Department, July 15, 1974.

*Malcolm J. Carey* for appellant.

*Vandervoort, Cline & MacVean* (*V. Frank Cline* of counsel), for respondent.

HOPKINS, Acting P. J. The plaintiff issued a liability insurance policy covering a truck owned by the defendant Allen Richard Cherry. An action was brought against Cherry by the defendant Patricia J. Rice, as administratrix of the estate of Charles J. Rice, deceased, for wrongful death. This declaratory judgment action was then instituted for an adjudication that the plaintiff is relieved of all obligations under the policy. The Special Term granted summary judgment in favor of the plaintiff, holding that, as the policy did not cover an intentional act causing injury, the conviction of Cherry for manslaughter in the first degree

conclusively absolved the plaintiff from all obligations under the policy. We reverse and grant partial summary judgment declaring that the plaintiff has the duty to defend Cherry in the pending action brought by the defendant Rice, as administratrix, against him, although the plaintiff's duty to pay damages is not presently ascertainable.

The wrongful death action arose out of an occurrence on April 26, 1967, when on or near a shale bank owned and operated by Charles J. Rice in the Village of Cornwall, Orange County, New York, Cherry operated a 1964 Ford pickup truck owned by him in such a manner as to strike and kill Rice. As a result of this incident, Cherry was subsequently indicted. The indictment charged Cherry with the killing of the deceased in the heat of passion, in a cruel and unusual manner, but without a design to effect death. Cherry was later found guilty by a jury of the crime of manslaughter in the first degree in violation of section 1050 of the former Penal Law [now Penal Law, § 125.20].

The civil action by the defendant Rice, as administratrix, against Cherry was instituted prior to Cherry's conviction. The complaint contained two causes of action. The first cause alleged that Cherry was liable for damages for the wrongful death of Rice as a result of Cherry's negligence. The second cause alleged that Cherry was liable for damages for intentionally causing the death of Rice. The plaintiff in the instant action, which had issued a policy on Cherry's truck, disclaimed coverage on the grounds, among others, that the death had been intentionally inflicted by Cherry and that the policy did not afford coverage for such an occurrence. The plaintiff relied on the provision in the policy which requires plaintiff: " To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, *caused by accident* and arising out of the ownership, maintenance or use of the automobile " (emphasis supplied).

Reasoning that the conviction of Cherry of manslaughter in the first degree pursuant to his indictment is prima facie evidence that the occurrence of April 26, 1967 was *not* an accident but was a criminal act not justifiable or excusable, the plaintiff moved for summary judgment seeking to be relieved of all its duties and liabilities under the insurance contract. In granting the plaintiff's motion the Special Term opined that Cherry's willful act [as evidenced by the manslaughter in the first degree conviction] obviated the concept of accident as embodied in the

plaintiff's policy, thereby relieving it from its obligations under the insurance policy. Cherry appeals.

The courts of this State have long recognized that the obligation of an insurance company to defend its insured is broader than the duty to pay (*Goldberg* v. *Lumber Mut. Cas. Ins. Co.*, 297 N. Y. 148, 154; *Monari* v. *Surfside Boat Club*, 469 F. 2d 9). In fact, most liability insurance policies [including the policy issued to Cherry] contain a provision obligating the insurer to defend the insured against all actions brought against him on the allegations of facts and circumstances which are covered by the policy, even though such suits are groundless, false or fraudulent (Ann. 50 ALR 2d, p. 463, § 3). Such is the rule in this State (*Prashker* v. *United States Guar. Co.*, 1 N Y 2d 584). Moreover, the insurer's duty to defend "includes the defense of those actions in which alternative grounds are asserted, some within and others without the protection purchased" (*Lionel Freedman, Inc.* v. *Glens Falls Ins. Co.*, 27 N Y 2d 364, 368).

Here, the complaint in the pending action brought by Rice against Cherry alleges a cause of action in negligence, which is clearly within the risk covered by the policy. Thus, the plaintiff may not be relieved of its duty to defend the action brought against the insured by a third party. In such action the question whether Cherry was negligent in the operation of the truck will be determined.[1] The plaintiff contends that Cherry's criminal conviction is a peremptory presumption of the intentional nature of the occurrence resulting in Rice's death. The plaintiff contends further that Cherry is collaterally estopped from attempting to relitigate the facts and issues of this incident which were previously litigated in the criminal prosecution (cf. *S. T. Grand, Inc.* v. *City of New York*, 32 N Y 2d 300).

While it is true that a criminal prosecution is deemed conclusive proof of its underlying facts in a subsequent civil action where the convicted person is seeking affirmative relief in spite of his own wrongdoing, the facts in this case do not support the application of that principle. In *S. T. Grand* (*supra*), on which the plaintiff relies, a party who had entered into a contract with the City of New York for the cleaning of a reservoir was convicted of conspiracy to use interstate facilities with intent to violate the bribery laws. The conviction was based upon an agreement to pay a "kickback" to the City Commissioner of Water Supply, Gas and Electricity in return for his

---

1. This assumes, of course, that Rice proceeds at the trial on the theory of negligence. It cannot be assumed at this stage that she will proceed only on the theory of an intentional harm by Cherry.

award of the cleaning contract. When the contractor sued the' city for the unpaid balance due on the contract, the city claimed, as a defense, that the contract was illegal by reason of the bribery and asserted a counterclaim. In its opinion (per JASEN, J.) the Court of Appeals invoked collateral estoppel, stating that the criminal conviction was conclusive proof of the plaintiff's bribery of the Water Commissioner and that in consequence the illegality of the contract was established as a matter of law. The opinion found two necessary requirements for the invocation of the doctrine: (1) an identity of issue which was necessarily decided in the prior action and is decisive of the present action, and (2) a full and fair opportunity to contest the decision now said to be controlling.

In the case before us, collateral estoppel may not be invoked against Rice as administratrix, since she or the estate neither participated nor was represented in the prior criminal action. Hence, she cannot be bound by the conviction of manslaughter against Cherry, but must be afforded an unfettered opportunity to prove the allegations of Cherry's negligence in the complaint. Moreover, there is no attempt here, as there was in *S. T. Grand,* by the party convicted to seek affirmative relief in contradiction of the facts underlying his conviction. It is a third party here who would use the conviction for its own benefit against both the convict and a third party.

In deciding as we do, we are not oblivious to an obvious conflict of interest existing between the plaintiff and Cherry. The plaintiff's interest would be promoted by proving that the death of Rice occurred because of Cherry's intentional act to cause harm. That proof would aid the administratrix's suit by predicating Cherry's liability under the second cause of action in the complaint.[2] On the other hand, Cherry's interest would be promoted by proving that the death of Rice occurred because of Cherry's negligence, which also aids the administratrix's case. "Where the interests of the carrier and the client run parallel with each other, the attorneys undoubtedly will exert their best efforts to protect the interests of their client, since in so doing, they will also be protecting the interests of their real principal. But where, as in this case, the interests are adverse one to the other, then the attorneys may not ' assist the lost traveler along the road and at the same time prepare a trap into which he will ultimately fall ' " (*Schwartz* v. *Sar Corp.,* 19 Misc

---

2. However, whether in fact the administratrix would be aided depends, of course, on Cherry's financial ability to respond apart from the policy.

2d 660, 666, revd. on other grounds 9 A D 2d 910; cf. *Impellizzeri* v. *Haug,* 282 App. Div. 742).

Similarly, in *Prashker* v. *United States Guar. Co.* (1 N Y 2d 584, *supra*), the defendant insurer attempted to withdraw from the defense of an action involving its insured because, under the circumstances of that case, it would be subject to divided loyalties. Nevertheless, that relief was denied. Under these circumstances, the court said that "if any such conflict of interest arises, as it probably will, the selection of the attorneys to represent the assureds should be made by them rather than by the insurance company, which should remain liable for the payment of the reasonable value of the services of whatever attorneys the assureds select" (p. 593).

The problems of conflicts of interest between insured and insurer arising out of the character of the act of the insured causing injury have not been uniformly determined (see, e.g., *Burd* v. *Sussex Mut. Ins. Co.,* 56 N. J. 383; *Gray* v. *Zurich Ins. Co.,* 65 Cal. 2d 263; *Glens Falls Ins. Co.* v. *American Oil Co.,* 254 Md. 120; *The Employers' Fire Ins. Co.* v. *Beals,* 103 R. I. 623; *Satterwhite* v. *Stolz,* 79 N. M. 320; note, 41 Ind. L. J. 87). In this State, at least, the relative interests of the insured and insurer are accommodated under *Prashker (supra)* by permitting the insured to choose his counsel and requiring the reasonable value of counsel's services to be reimbursed by the insurer.[3]

Hence, in the case before us, the plaintiff shall remain liable for the reasonable cost of defending the action against Cherry, who will select his own independent counsel. Furthermore, the trial court in that action should obtain a special verdict on the issue whether recovery, if any, is based on the first or second cause of action in the complaint.

Accordingly, the Special Term's order and judgment granting summary judgment to the plaintiff should be reversed, on the law, with $20 costs and disbursements, and partial summary judgment awarded to the defendant Cherry, to the extent that the plaintiff is not relieved of its duty to defend under the policy and is to be responsible for the reasonable value of the services of Cherry's counsel in accordance with this opinion, and that the remaining claims of the plaintiff in this action shall await

---

3. We do not mean to say that the plaintiff's obligation to pay the damages which may be recovered against Cherry on the theory of negligence in the Rice action is conclusive proof of the plaintiff's obligation under the policy. Obviously, it would not be, since the plaintiff neither is a party nor would be participating in the Rice action.

determination after the conclusion of the action by Rice against Cherry.

CHRIST, BRENNAN, BENJAMIN and MUNDER, JJ., concur.

Order and judgment of the Supreme Court, Orange County, entered January 21, 1972 and January 27, 1972, respectively, reversed, on the law, with $20 costs and disbursements, and partial summary judgment awarded to defendant Cherry, to the extent set forth in the opinion rendered herewith.