**Patricia Barrett SNYDER, Plaintiff,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY, Defendant.**

No. 87 Civ. 8559 (PKL).

United States District Court,
S.D. New York.

June 20, 1988.

Thomas A. Andrews, P.C., New York City (Thomas A. Andrews, Howard Falck Husum, Jr., of counsel), for plaintiff.

Gordon & Silber, P.C., New York City (David Henry Sculnick, of counsel), for defendant.

## OPINION & ORDER

LEISURE, District Judge:

This is an action for a declaratory judgment pursuant to 28 U.S.C. sections 2201 and 2202. Plaintiff, Patricia Barrett Snyder ("Snyder") seeks a declaration that defendant, National Union Fire Insurance Company ("National Union"), is contractually obligated to defend Byron Major, M.D. ("Major" or "Dr. Major") in the pending suit of *Snyder v. Major*, 85 Civ. 9812 (PKL) (the "underlying action"). The matter is now before the Court on plaintiff's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and on defendant's cross-motion for summary judgment. For the reasons stated below, plaintiff's motion is granted and defendant's motion is denied.

## FACTUAL BACKGROUND

In order to apprehend the facts of this case, it is first necessary to summarize the facts of the underlying action. In that case, plaintiff alleges that Dr. Major was a duly licensed physician practicing medicine and plastic surgery in New York City. Snyder was a patient of Dr. Major's and was undergoing treatment by Dr. Major. On December 10, 1985, plaintiff had an appointment with Major to monitor a prior plastic surgery procedure which defendant had performed in or about 1981.

During the course of this appointment, Dr. Major allegedly sedated Snyder and then sexually abused and raped her. Dr. Major has since been convicted in Supreme Court of New York for New York County of first degree sexual abuse. Snyder's complaint in the underlying action against Major asserts nine causes of action. The causes of action asserted are as follows: 1) medical malpractice; 2) assault and battery; 3) negligence; 4) rape; 5) sexual abuse; 6) reckless endangerment; 7) wrongful drug injection; 8) failure to obtain informed consent; and 9) intentional infliction of emotional distress.

Until August 14, 1987, National Union provided coverage for Major pursuant to an insurance policy under which Major was one of the insureds. After his conviction in State court in June of 1987 on the sexual abuse charge, National Union disclaimed coverage and Bower & Gardner, the firm retained by National Union to defend Dr. Major, moved the Court for leave to withdraw from its representation of Major. On December 21, 1987, the Court granted Bower & Gardner's motion. Shortly thereafter, this action was commenced by Snyder for a declaratory judgment that National Union must pay any judgment rendered against Major, or at least that National Union must continue to defend this action.

The policy that plaintiff asserts provides coverage in this case was issued by National Union to Brookdale Hospital Medical Center ("the Policy"). Endorsement # 1 to the Policy provided coverage to additional insureds set forth in a separate schedule filed with National Union. Dr. Major was named on that schedule.

The Policy provided that National Union would

pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury, including death, to which this insurance applies caused by a medical incident covered herein which occurs during the policy period.

The Company shall have the right and duty to defend any suit against the insured seeking damages because of such injury even if any of the allegations of the suit are groundless, false or fraudulent. . . .

Policy GLA 956–5881, effective July 1, 1983 to July 1, 1986, annexed as Exhibit A to Affidavit of Henry David Sculnick, Esq. (hereinafter "Sculnick Aff."), sworn to on March 2, 1988.

Endorsement # 1 to the Policy, applicable here, which deals with additional insureds, provided that

coverage afforded by this endorsement shall not apply:

(F) to liability of the additional insured arising out of the performance of a criminal act; provided, that this exclusion shall not apply with respect to defense of suits unless the additional insured is convicted in a criminal prosecution based on such acts or omissions for which claim or suit is brought against the insured.

*Id.* National Union contends that it is no longer under any obligation to defend Major because he has been convicted of a crime, and the exclusion contained in paragraph (F) of Endorsement # 1 applies. To that contention the Court now turns.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "In considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2509–11, 91 L.Ed.2d 202 (1986); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985)).

The Court must first look to the substantive law governing the case to determine which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. Once the Court has determined what facts are material, it must then determine whether there is a genuine issue as to a material fact. At this stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2510. The standard for summary judgment thus "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Id.* at 250, 106 S.Ct. at 2511.

The party seeking summary jugment always bears the initial burden of informing the Court of the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The burden on the moving party will be "discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554. The burden then shifts to the nonmoving party to show that there is a genuine issue of fact for trial. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. When, as in this case, both sides move for summary judgment, the Court must apply the same standard for both motions. *Eastman Machine Co. v. United States*, 841 F.2d 469, 473 (2d Cir.1988). Mindful of the foregoing principles, the Court now turns to the merits of the parties' cross-motions for summary judgment.

■ Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a federal court sitting in diversity jurisdiction must apply the substantive law of the state in which it is sitting, including that state's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Aetna Casualty and Surety Co. v. General Time Corp.*, 704 F.2d 80 (2d Cir. 1983). New York courts have traditionally

resolved choice of law issues involving insurance policies by applying the law of the state which the parties understood would be the principal location of the risk. *See, e.g., Steinbach v. Aetna Casualty and Surety Co.,* 81 A.D.2d 382, 385, 440 N.Y. S.2d 637, 640 (1st Dept.1981). In the instant case, the policy was issued to Brookdale Medical Center, located in New York. Both parties have premised their briefs on the assumption that New York law applies. Because New York is the state most intimately concerned with the outcome in this case, and is the location of the insured risk, the Court will apply New York law. *See Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38, 44 n. 5 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987).

# I

■ *Estoppel.* Snyder contends that National Union is estopped from disclaiming coverage at this date because it undertook to defend Dr. Major. By letter dated December 27, 1985 to Dr. Major from Ackerman, Salwen & Glass, annexed as Exhibit B to Sculnick Aff., the insurance company notified Dr. Major that National Union would defend the action against him until such time as the question of coverage was resolved. The letter reserved National Union's rights to deny indemnification, and specifically referred to the exclusion in the policy for criminal acts. As quoted above, that section states:

> coverage afforded by this endorsement shall not apply:
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (F) to liability of the additional insured arising out of the performance of a criminal act; provided, that this exclusion shall not apply with respect to defense of suits unless the additional insured is convicted in a criminal prosecution based on such acts or omissions for which claim or suit is brought against the insured.

The proviso clearly states that the exclusion shall not apply until there is a conviction in a criminal proceeding. Dr. Major

was convicted of sexual abuse in the summer of 1987. On August 14, 1987, National Union disclaimed coverage and informed Dr. Major that it would no longer provide a defense on his behalf. Letter dated August 14, 1987 to Dr. Major from Joyce J. Campbell, annexed to Sculnick Aff. as Exhibit C.

Plaintiff claims that National Union, having undertaken the defense of the suit, is now estopped from denying coverage. In support of this contention, Snyder relies on *Dryden Mutual Ins. Co. v. Michaud,* 115 A.D.2d 150, 495 N.Y.S.2d 509 (3d Dept. 1985). In that case, the Third Department found that a delay of over two years in disclaiming coverage under a policy of insurance would result in the insurer being estopped from denying coverage. But the Court found that a delay "for such an unreasonable length of time, while [the insurer] was or should have been possessed of knowledge of facts giving rise to its defense to coverage on the policy, results in an estoppel preventing [the insurer] from disclaiming." 115 A.D.2d at 152, 495 N.Y.S.2d at 510.

In the instant case, however, there was no delay between the time when National Union became aware of Dr. Major's conviction in New York State Court and when it disclaimed under the policy. Accordingly, *Dryden* is inapposite. The policy in this case contained an exclusion for liability arising out of the performance of a criminal act, but had the explicit proviso that such exclusion was inapplicable until such time as the insured was actually convicted of a crime. It is thus the conviction of a crime that triggers the exclusion. Under these circumstances, there was no unreasonable delay in disclaiming coverage, and any contention that there was such a delay borders on the frivolous.[1] The Court now turns to the substantial questions presented by the cross-motions for summary judgment.

# II

■ *National Union's Duty to Indemnify.* Snyder first contends that this Court

---

1. Indeed, it may be that National Union has disclaimed too early. There is a substantial question as to whether a conviction is final for the purposes of interpreting an insurance policy when the defendant has not yet exhausted his appellate remedies.

should enter summary judgment that National Union is required, as a matter of law, to indemnify Dr. Major for any recovery against him. Plaintiff asserts that it is uncontroverted that Dr. Major did not intend to harm his patient, and that his "demonstrated active intention was to avoid damage or injury." Affidavit of Howard Falck Husum, Jr., Esq. (hereinafter "Husum Aff.") sworn to on February 17, 1988, ¶ 18(a). In the alternative, Snyder maintains that "the sexual episode undertaken within the context of the medical treatment was consensual." *Id.* at ¶ 18(b). Plaintiff contends that under either set of facts, which it maintains must be accepted as incontrovertible, coverage exists. The alternative contentions of the plaintiff clearly demonstrate that a factual dispute exists over whether Dr. Major intended to injure the plaintiff. Because a material issue of fact is in dispute, summary judgment cannot be entered on this basis.

Moreover, plaintiff makes a fundamental mistake of law. Plaintiff contends that all she must show in order to require National Union to indemnify Dr. Major for any recovery she wins against him is that there was no intent to cause injury. But this alone is not enough to require the insurer to indemnify Dr. Major. It must also be ultimately shown that the injury did not arise from a criminal act on the part of Dr. Major. That too is a hard-core factual determination, and one that must be left for the finder of fact in the underlying action to determine. The Court therefore denies plaintiff's motion for summary judgment that National Union is required to indemnify Dr. Major for any recovery he is obligated to pay. The determination whether National Union is required to indemnify Dr. Major must await the answers to special questions submitted to the jury in the underlying action.

## III

■ *National Union's Duty to Defend.* The Court now turns to Snyder's other contention, namely, that National Union is nonetheless obligated to provide a defense for Dr. Major. At the outset, the Court notes a well-settled principle of insurance law in New York: the duty of an insurer to defend is broader than its duty to indemnify. *See, e.g., International Paper Co. v. Continental Casualty Co.*, 35 N.Y.2d 322, 361 N.Y.S.2d 873, 320 N.E.2d 619 (1974); *Federal Ins. Co. v. Cablevision Systems Development Co.*, 836 F.2d 54, 56–57 (2d Cir.1988). In *International Paper*, the New York Court of Appeals unanimously held that

> [a]n insurer's obligation to furnish its insured with a defense is heavy indeed, and, of course, broader than its duty to pay. The rule to be followed is clearly set out in *Goldberg v. Lumber Mut. Cas. Ins. Co. of N.Y.*, 297 N.Y. 148, 154, 77 N.E.2d 131, 133, wherein this court wrote: "Indeed, even in cases where the policies do not render the allegations by the injured party controlling, it has been said: 'The distinction between liability and coverage must be kept in mind. So far as concerns the obligation of the insured to defend the question is not whether the injured party can maintain a cause of action against the insured but whether he can state facts which bring the injury within the coverage. If he states such facts the policy requires the insurer to defend irrespective of the insured's ultimate liability.'"

*International Paper*, 35 N.Y.2d at 326–27, 361 N.Y.S.2d at 876, 320 N.E.2d at 621–22.

In light of this broad duty to defend, the plaintiff need merely show that her complaint brings the claim within the coverage of the policy. As one noted treatise on insurance law observed, "[a]n insurer's duty to defend an action against the insured is measured, in the first instance, by the allegations in the plaintiff's pleadings, and if such pleadings state facts bringing the injury within the coverage of the policy, the insurer must defend, irrespective of the insured's ultimate liability to the plaintiff." 7C Appleman, *Insurance Law and Practice* § 4683 at 42 (Berdal ed. 1979).

In the instant case, plaintiff alleges that Dr. Major committed acts of medical malpractice separate and apart from the sexual abuse of which he was convicted. National Union seeks to avoid coverage by claiming

that the exclusion for liability arising out of the performance of a criminal act is applicable.

In support of her contention that coverage exists, Snyder relies on several cases. *Vigilant Ins. Co. v. Kambly*, 114 Mich. App. 683, 319 N.W.2d 382 (Mich.App.1982), and *L.L. v. Medical Protective Co.*, 122 Wis.2d 455, 362 N.W.2d 174 (Wis.App. 1984), do not support plaintiff's position because both cases dealt with the determination whether a psychiatrist's performance of sexual acts with a patient can constitute malpractice or failure to give proper treatment. That issue is not raised here; rather, the issue here is the applicablility of the exclusion for performance of a criminal act.

Plaintiff also cites two New York cases that are not directly on point, but shed some light on the issues in this case. In *Utica Mutual Ins. Co. v. Cherry*, 45 A.D. 2d 350, 358 N.Y.S.2d 519 (2d Dept.1974), *aff'd*, 38 N.Y.2d 735, 381 N.Y.S.2d 40, 343 N.E.2d 758 (1975), the court observed that "the insurer's duty to defend 'includes the defense of those actions in which alternative grounds are asserted, some within and others without the protecion purchased.'" 45 A.D.2d at 353, 358 N.Y.S.2d at 522 (citing *Lionel Freedman, Inc. v. Glens Falls Ins. Co.*, 27 N.Y.2d 364, 368, 318 N.Y.S.2d 303, 305, 267 N.E.2d 93, 94 (1971)).

In *Cherry*, the insured was convicted of manslaughter in the first degree for hitting and killing Charles Rice with a 1964 Ford pick-up truck. Rice's executrix sued Cherry, alleging in the first cause of action that Cherry was liable for the wrongful death of Rice as a result of negligence. The second cause of action alleged that Cherry was liable for intentionally causing the death of Rice. The insurer moved for summary judgment that it did not have to defend or indemnify Cherry. The trial court granted the motion, but the Second Department reversed.

The court held that because one ground asserted, namely, the negligence of Cherry, was within the coverage of the policy, the insurer had to defend the action. The court concluded that the trial court should obtain a special verdict on the issue whether the recovery, if any, was based on the first or second cause of action. 45 A.D.2d at 355, 358 N.Y.S.2d at 524.

National Union contends that *Cherry* is not controlling here because of the difference in policy language. The policy at issue in *Cherry* stated that the insurer would pay all sums it became obligated to pay that were "caused by accident and arising out of the ownership, maintenance or use of the automobile," *Cherry*, 45 A.D. 2d at 352, 358 N.Y.S.2d at 521. National Union argues that

> The insurer argued in the *Cherry* case that since the driver of the truck had been convicted of manslaughter, that should be *prima facie* evidence that the occurrence was not an accident, and therefore should not be covered. That Court's decision to obligate the carrier to provide a defense is really inapposite to the case at bar because National's disclaimer is not based on an interpretation of a "medical incident" (the covered act) but rather on the specific exclusionary language itself. Hence, arguing that there may be covered as well as noncovered claims should not and cannot affect the interpretation of the exclusionary clause itself or what its clear meaning is.

Sculnick Aff. at 8.

The other case relied on by Snyder is *Public Service Mutual Ins. Co. v. Goldfarb*, 53 N.Y.2d 392, 442 N.Y.S.2d 422, 425 N.E.2d 810 (1981). In that case, the insurance company issued a Dentist's Professional Liability Policy to Saul Goldfarb. In the course of treating Jacqueline P. Schwartz, Dr. Goldfarb sexually abused her. Dr. Goldfarb was convicted of sexual abuse in the third degree. The trial court found that the insurer had no duty to defend or indemnify Dr. Goldfarb because the acts complained of were undertaken for his personal satisfaction, and not in the course of proper dental treatment. The Appellate Division, First Department, reversed, with two Justices dissenting. The Court of Appeals then unanimously decided that the

insurer had the duty to defend Dr. Goldfarb.

The court found that

the complaint against Dr. Goldfarb alleges both intentional acts which caused unintended injury, seeking compensatory damages therefor and intentional causation of injury, seeking compensatory and punitive damages therefor. To the extent that Schwarz' complaint can be construed as a claim for injuries unintentionally caused by Dr. Goldfarb, he may seek indemnity from his insurer for that claim. Thus, the insurer would be obligated to pay any judgment against Dr. Goldfarb for compensatory damages only, assuming, of course, that the trier of fact determined, in a special verdict, that such unintended injury occurred in the course of dental treatment.

53 N.Y.2d at 399–400, 442 N.Y.S.2d at 426, 425 N.E.2d at 814.

National Union contends that *Goldfarb* does not control the instant case because the policy language is different from that used in this case. The policy at issue in that case required the insurer to defend and indemnify sums which the insured "shall become obligated to pay by reason of the liability imposed upon him for damages because of injury resulting from professional dental services rendered ... malpractice, error, negligence or mistake, assault, slander, libel, [or] undue familiarity." 53 N.Y.2d at 398, 442 N.Y.S.2d at 425, 425 N.E.2d at 813. As the court found, this language "clearly indicates an intent on the part of the insurer to pay both compensatory and punitive damages arising out of unlawful or inappropriate physical contact which occurs during the course of dental treatment." 53 N.Y.2d at 390, 442 N.Y.S. 2d at 425–26, 425 N.E.2d at 813. There was, however, no exclusion for conviction of a crime.

The Court finds that neither *Cherry* nor *Goldfarb*, strictly speaking, controls the instant case. Both cases are, however, instructive, for both cases are examples of cardinal principles of interpretation of insurance policies, and those principles dictate that National Union must continue to defend Dr. Major.

It is well-settled that insurance policies under New York law must be interpreted so that any ambiguities are construed in favor of the insured. *See, e.g., Board of Education, Yonkers City School Dist. v. CNA Ins. Co.,* 839 F.2d 14, 17 (2d Cir.1988); *Vargas v. Insurance Co. of North America,* 651 F.2d 838, 840 (2d Cir.1981). A corollary principle is that exclusions are to be narrowly construed so that the scope of coverage remains as broad as possible. "In accord with general principles of construction, any ambiguity in an exception clause is construed in favor of the insured." 12 *Couch on Insurance 2d* § 44A:3 at 7 (rev. ed. 1981). As a result, an insurer can avoid its obligation to defend an action only if it proves that "the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, *in toto*, are subject to no other interpretation." *International Paper*, 35 N.Y. 2d at 325, 361 N.Y.S.2d at 875, 320 N.E.2d at 621. The decisions in *Cherry* and *Goldfarb* were based on this principle. Thus, although those cases are not controlling because the policy language there differed from the language here, the same principle that dictated the result in those cases dictates the result here.

National Union has not proven that the "allegations of the complaint cast that pleading solely and entirely within the policy exclusions...." *International Paper*, 35 N.Y.S.2d at 325, 361 N.Y.S.2d at 875, 320 N.E.2d at 621. The complaint alleges separate and distinct acts of medical malpractice. The factfinder could determine that Dr. Major committed separate and independent acts in addition to the sexual abuse that would bring his claim within the coverage of the policy and outside the scope of any exclusion. National Union must therefore continue to defend Dr. Major.

## CONCLUSION

Therefore, summary judgment is granted in favor of the plaintiff. National Union must continue to defend Dr. Major until such time as it appears that there is no

chance that there will be coverage under the policy. Accordingly, National Union shall provide Dr. Major with counsel of his choosing at National Union's expense. The Court will submit special questions to the jury as provided in *Goldfarb,* 53 N.Y.2d at 398–99, 442 N.Y.S.2d at 426, 425 N.E.2d at 813–14, on the issue of intent and whether Dr. Major's conduct constituted one single course of action or whether the events were separate and distinct.

It is hereby ordered that summary judgment be entered in plaintiff's favor. A separate order will be issued at this time lifting the stay of discovery in the underlying action. Counsel in that case are reminded that the case is before Magistrate Dolinger for general pretrial supervision, and they should contact him about any discovery problems.

The Court hereby orders that summary judgment be entered in favor of the plaintiff, declaring that defendant National Union must provide a defense for Dr. Major in the underlying action.

SO ORDERED.