**U.S. UNDERWRITERS INSURANCE CO., Plaintiff,**

v.

**CONGREGATION B'NAI ISRAEL and Wessa Eskandar, Defendants.**

No. 93–CV–5806 (JG).

United States District Court,
E.D. New York.

Oct. 5, 1995.

Richard S. Sklarin, Thurm & Heller, New York City, for Plaintiff.

Alan C. Trachman, Meissner, Kleinberg & Finkel, New York City, for Defendants.

## MEMORANDUM AND ORDER

GLEESON, District Judge:

U.S. Underwriters Insurance Company ("U.S. Underwriters") has brought this action under 28 U.S.C. § 2201 against Congregation B'nai Israel ("the Congregation") and Wessa Eskandar. U.S. Underwriters seeks a declaration that it is not obligated to defend and indemnify the Congregation in a personal injury action brought against it by Eskandar. Before me are cross-motions for summary judgment by U.S. Underwriters and the Congregation. For the following reasons, U.S. Underwriters' motion is granted, and the cross-motion is denied.

### BACKGROUND

On February 16, 1993, U.S. Underwriters issued a general liability policy ("the policy") to the Congregation, Yeshiva Shearith Hapletah, Congregation Beth Baruch, Beth Chana School For Girls, Yeshiva Yesode Hatorah, and Congregation Hatorah Vehamitzvah. Two provisions of the insurance policy are of particular relevance to this case.

First, the policy contains an "Independent Contractors Exclusion," which reads:

It is agreed that this policy shall not apply to Bodily Injury, Personal Injury or Property Damage arising out of operations performed for any insured by independent contractors or acts or omissions of any insured in connection with his general supervision of such operations.

(Declaration of Richard S. Sklarin, Esq., Ex. G) ("Sklarin Decl.")

Second, the policy contains a provision obligating the insured to notify U.S. Underwriters promptly in the event of an "occurrence, claim or suit." Specifically, the provision states:

In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.

(*Id.*).

The current dispute began on June 28, 1993, when Wessa Eskandar, and employee of Sais Construction, Inc., fell off a ladder while working in a building at 620 Bedford Avenue, Brooklyn, New York. Eskandar was seriously injured and had to be taken to the hospital.

Rabbi Jacob Silberman was the administrator of Yeshiva Shearith Hapletah, Beth Chana School for Girls, and Yeshiva Yesode Hatorah, religious schools which occupied 620 Bedford Avenue and other nearby buildings. He testified at his deposition that he learned about the accident by "word of mouth" a "day or two" after it happened. All he remembered being told was that "somebody fell and they took him to the hospital." (Declaration of Alan C. Trachman, Esq., Ex. A at 33–34) ("Trachman Decl.")

On September 28, 1993, Eskandar sued the Congregation in state court, alleging that it (a) owned the 620 Bedford Avenue premises; (b) had hired Sais Construction to perform renovations of that building; and (c) was therefore statutorily liable to Eskandar for his injuries. The alleged basis for the Congregation's liability is Section 240 of the Labor Law of the State of New York, under which a property owner is strictly liable for injuries sustained by a subcontractor's employee while using defective or improperly placed scaffolding or other equipment governed by the statute. *Weaver v. Lazarus,* 93 A.D.2d 859, 461 N.Y.S.2d 363 (2d Dep't 1983) (scaffolding); *Bland v. Manocherian,* 66

N.Y.2d 452, 497 N.Y.S.2d 880, 488 N.E.2d 810 (1985) (ladder).

Eskandar's complaint was apparently served on or about November 3, 1993. Within a day or two, Rabbi Silberman forwarded a copy to the insurance broker, and U.S. Underwriters was notified of the claim by the broker.[1] On January 12, 1994 U.S. Underwriters served written notice of its intent to disclaim liability to defend and indemnify the Congregation by serving the summons and complaint in this action.

## DISCUSSION

U.S. Underwriters contends that it is not obligated to defend or indemnify the Congregation for two reasons. First, it argues that the "Independent Contractors Exclusion" clause governs Eskandar's lawsuit against the Congregation, and relieves U.S. Underwriters of any duty to defend or indemnify the Congregation. Second, U.S. Underwriters claims that it may disclaim coverage under the policy because of the late notice of Eskandar's accident provided to U.S. Underwriter by the Congregation.

The Congregation denies that the exclusion applies to Eskandar's underlying action, and asserts that it gave timely notice of that action. In addition, the Congregation cross-moves for summary judgment on the ground that U.S. Underwriters did not give the Congregation timely notice of its intention to disclaim coverage.

The rules governing the remedy of summary judgment are as follows:

First, summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Second, the burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists. In considering that, third, all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought. Fourth, the moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.

*Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1223–24 (2d Cir.1994) (citations omitted).

A. *The Independent Contractors Exclusion*

■ Under New York law,[2] a court must give unambiguous provisions of insurance contracts their plain and ordinary meaning. *Sanabria v. American Home Assurance Co.,* 68 N.Y.2d 866, 508 N.Y.S.2d 416, 501 N.E.2d 24 (1986); *see also State v. Capital Mutual Ins. Co.,* 213 A.D.2d 888, 623 N.Y.S.2d 660, 661 (3rd Dep't 1995). Exclusionary clauses are of course subject to the same rule, and a "court is not permitted to construe [such] a clause in a way that drains it of its only intended meaning." *Commissioners of the State Ins. Fund v. Insurance Co. of North America,* 80 N.Y.2d 992, 994, 592 N.Y.S.2d 648, 607 N.E.2d 795 (1992); *Levy v. National Union Fire Ins. Co. of Pittsburgh,* 710 F.Supp. 474, 476 (S.D.N.Y.1989).

■ However, "whenever an ambiguity is found in the provisions of an insurance policy, any doubt about the existence of in-

---

**1.** U.S. Underwriters asserts that its first notice of the accident was approximately one week later. (Sklarin Decl. ¶ 15.)

**2.** Subject matter jurisdiction is based on the diversity of citizenship between U.S. Underwriters, a North Dakota corporation, and the Congregation, a New York domestic religious corporation. A federal district court deciding a diversity case must apply the choice of law rules of the state in which the district court sits. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020,

85 L.Ed. 1477 (1941); *Crossland Premium Funding, Inc. v. Haines,* 1990 WL 109210 (E.D.N.Y. June 29, 1990). Under New York law, an action requesting the determination of an insurer's duties respecting events that took place in New York is governed by New York law. *Mount Vernon Fire Ins. Co. v. Creative Housing Ltd.,* 797 F.Supp. 176, 179 (E.D.N.Y.1992); *Snyder v. National Union Fire Ins. Co.,* 688 F.Supp. 932, 934–35 (S.D.N.Y.1988).

surance coverage should be resolved in favor of the insured and against the insurance carrier." *Soundview Assoc. v. New Hampshire Ins. Co.,* — A.D.2d ——, 625 N.Y.S.2d 659 (2d Dep't 1995). Moreover, when an insurer seeks to invoke an exclusionary clause in order to disclaim coverage, it has the burden of demonstrating that the exclusion applies "in clear and unmistakable language," which is "subject to no other reasonable interpretation." *Mount Vernon Fire Ins. Co.,* 797 F.Supp. at 180 (quoting *Seaboard Surety Co. v. Gillette,* 64 N.Y.2d 304, 311, 486 N.Y.S.2d 873, 476 N.E.2d 272 (1984)). Put another way, U.S. Underwriters must show that the allegations contained in Eskandar's complaint fall "solely and entirely" within an unambiguous exclusion from the policy's coverage. *Avondale Ins. Inc. v. Travelers Indem. Co.,* 887 F.2d 1200, 1204 (2d Cir.1989); *State of New York v. AMRO Realty Corp.,* 936 F.2d 1420, 1426 (2d Cir. 1991).

■ U.S. Underwriters argues that the independent contractors exclusion is clear and unambiguous. The clause excludes coverage for personal injuries "arising out of operations performed for any insured by independent contractors;" Eskandar was an employee of such an independent contractor, and his alleged injuries arose out of the operations it performed on the Congregation's premises. Thus, the exclusion clause seems clearly intended to apply to precisely this type of claim. The Congregation counters by arguing that the Yeshiva Shearith Hapletah—not the Congregation—contracted with Sais Construction for the renovations. Therefore, the Congregation claims, Sais did not perform any operations for the Congregation within the meaning of the independent contractors clause.

This argument has no merit. First, the plain language of the independent contractors's exclusion provides that U.S. Underwriters may disclaim all coverage for "work performed for *any* insured by independent contractors." Both the Congregation and the Yeshiva are among the six entities that are collectively defined as the "insured" in the policy. (Sklarin Decl., Ex. G at Endorsement 1). It is thus undisputed that Sais

Construction was an independent contractor hired by the insured. The plain meaning of the exclusion thus allows U.S. Underwriters to disclaim coverage with respect to claims by Eskandar against all of the insured entities.

Second, the undisputed facts belie the Congregation's suggestion that there are meaningful distinctions among the various insured entities. Rabbi Silberman testified that Yeshiva Shearith Hapletah, the Beth Chana School for Girls, and Yeshiva Yesode Hatorah were all "under one umbrella." (Trachman Decl., Ex. A at 13.) Yeshiva Shearith Hapletah and Beth Chana had the same Board of Directors, and those entities, the Congregation, and Yeshiva Yesode Hatorah all shared the same phone number and office at 616 Bedford Avenue, Brooklyn. Rabbi Silberman, although nominally not an employee of the Congregation, testified that he took care of all "serious matters" for it, including paying its bills. Indeed, he secured the subject insurance policy for the Congregation and paid the premiums. To his knowledge, the Congregation had no employees (*Id.* at 16–25.)

The building at 620 Bedford Avenue, where Eskandar was injured, is owned by the Congregation and was leased to the Yeshiva Shearith Hapletah in 1976 for 49 years. (Trachman Decl., Ex. B.) However, the lease does not call for any payments. The building is used to house two of the schools administered by Rabbi Silberman, and he alone hired Sais Construction to perform a complete renovation of the building. Although the Congregation nominally has a president, he testified that he had no responsibilities (and no idea of the size of the Congregation), and that Rabbi Silberman was authorized to renovate the building however he wanted. (Trachman Decl., Ex. C at 15, 20, 23, 69–70.)

Thus, for all purposes relevant to this case, the schools operated by Rabbi Silberman and the Congregation were a single entity. In this context, acceptance of the Congregation's claimed interpretation of the independent contractors exclusion would produce absurd results. Beth Chana, for example, could avoid the exclusionary clause with re-

spect to a renovation of its facilities by simply arranging for Yeshiva Yesode Hatorah (a separately listed insured) to hire the independent contractor to perform the renovations. Under the interpretation advocated by the Congregation, U.S. Underwriters would then be limited to disclaiming coverage only against Beth Chana.

■ The only plausible interpretation of the exclusion is that the insured entities collectively bear the risk of liability arising out of their hiring of independent contractors. The exclusion thus applies to the Congregation.[3]

B. *The Congregation's Notice of Claim.*

■ U.S. Underwriter's second argument is that the Congregation violated its obligations under the insurance policy when it failed to provide U.S. Underwriters with a timely notice of claim. Under New York Law, compliance with a notice-of-occurrence or notice-of-claim provision in an insurance contract is a condition precedent to an insurer's liability under the policy. *Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.,* 748 F.2d 118, 121 (2d Cir.1984); *Commercial Union Ins. Co. v. International Flavors & Fragrances, Inc.,* 822 F.2d 267, 271 (2d Cir.1987). Accordingly, the failure of an insured to provide notice within a reasonable time will constitute a complete defense to coverage. *State of New York v. Blank,* 27 F.3d 783, 793 (2d Cir.1994). The insurer need not demonstrate prejudice in order to assert the defense of late notice. *Sparacino v. Pawtucket Mut. Ins. Co.,* 50 F.3d 141, 143 (2d Cir.1995); *Smalls v. Reliable Auto Service, Inc.,* 205 A.D.2d 523, 612 N.Y.S.2d 674, 675 (2d Dep't 1994).

■ In order for a notice to be untimely, it must be demonstrated that "the circumstances known to the insured ... would have suggested to a reasonable person the possibility of a claim." *Commercial Union Ins. Co.,* 822 F.2d at 271; *Olin Corp. v. Insurance Co. of North America,* 966 F.2d 718, 722 (2d Cir.1992). This test "is an objective one, asking what an insured 'reasonably could or should have concluded.'" *American Ins. Co. v. Fairchild Indus., Inc.,* 852 F.Supp. 1173, 1178 (E.D.N.Y.1994) (quoting *Olin Corp. v. Insurance Co. of North America,* 743 F.Supp. 1044, 1052 (S.D.N.Y.1990)).

■ However, even where the notice of claim is delayed, the defense is not available if the insured can show a valid excuse for the delay. A valid excuse may be established by proof that the insured had a reasonable belief in non-liability or lacked knowledge that the accident had occurred. *Id.; Security Mut. Ins. Co. of New York v. Acker–Fitzsimons Corp.,* 31 N.Y.2d 436, 440, 340 N.Y.S.2d 902, 293 N.E.2d 76 (1972). The insured has the burden of proof when asserting the existence of such an excuse. *Id.*

■ Finally, when assessing the reasonableness of a delay or the validity of an asserted excuse, "[it] is also well settled that the reasonableness of a delay, where mitigating circumstances ... are offered as an excuse, is usually for the jury." *Deso v. London & Lancashire Indem. Co. of America,* 3 N.Y.2d 127, 129, 164 N.Y.S.2d 689, 143 N.E.2d 889 (1957); *Heydt Contracting Corp. v. American Home Assurance Co.,* 146 A.D.2d 497, 536 N.Y.S.2d 770, 772 (1st Dep't 1989). It is generally only where the insured offers no excuse for the delay that a court may find, as a matter of law, that the delay was unreasonable.[4] *James v. Allstate Ins.*

3. The Congregation has also argued that it did not perform any "acts or omissions" in connection with any general supervision of Sais Construction's renovations. Eskandar grounds his claim under section 240 of New York's Labor Law, which holds an owner of property strictly liable for injuries sustained by a subcontractor's employee using a ladder or scaffolding. The Congregation, as owner of 620 Bedford Avenue, was thus charged with a duty of insuring that defective equipment was not used. Its failure to assure the safety of Sais Construction's operations thus constitutes an "omission." In any event, the exclusion clause is not limited to liability based on the Congregation's "omissions," it also excludes coverage for claims "arising out of operations performed by independent contractors."

4. Where no excuse is offered, New York courts have been very intolerant of even short delays. *See, e.g., Rushing v. Commercial Casualty Ins. Co.,* 251 N.Y. 302, 304, 167 N.E. 450 (1929) (finding 22–day delay unreasonable); *Haas Tobacco Co. v. American Fidelity,* 226 N.Y. 343, 123 N.E. 755 (1919) (finding 10–day delay unreasonable). However, in many such cases, the occurrence has been of a kind that would intrinsically

*Co.,* 177 A.D.2d 998, 578 N.Y.S.2d 18, 18 (4th Dep't 1991); *Eveready Ins. Co. v. Chavis,* 150 A.D.2d 332, 540 N.Y.S.2d 860, 861 (2d Dep't 1989).

In this case, the Congregation claims that the approximately four-month delay between the accident and the notice of claim was not unreasonable. First, it points out that at the time of Eskandar's fall, very little was known about the accident, including the nature and extent of Eskandar's injuries. Rabbi Silberman testified that he had only heard of the accident by word of mouth. When Eskandar served his summons and complaint, the Congregation promptly notified U.S. Underwriters.

Second, the Congregation asserts that "Rabbi Silberman would have no inkling as to the Congregation's liability" under New York's Labor Law. This is a persuasive argument. Rabbi Silberman—who is not a lawyer—had no reason to know that a landowner is strictly liable under a provision of New York's Labor Law for ladders defectively placed on its premises by an independent contractor. In these circumstances, New York courts have observed that an insured's good faith belief in non-liability is ordinarily a question of fact. *See, e.g., G.L.G. Contracting Corp. v. Aetna Casualty and Surety Co.,* ― A.D.2d ―, 626 N.Y.S.2d 307, 309 (1995); *Herold v. East Coast Scaffolding, Inc.,* 208 A.D.2d 592, 617 N.Y.S.2d 197, 198 (2d Dep't.1994).

The extent of Rabbi Silberman's knowledge of the accident and the reasonableness of his failure to notify U.S. Underwriters are questions of fact for resolution at trial. Thus, to the extent that U.S. Underwriter's motion for summary judgment is based on the Congregation's unreasonable delay in providing a notice of claim, it is denied.

### C. U.S. Underwriters' Notice of Disclaimer

The Congregation has cross-moved for summary judgment on the ground that U.S. Underwriters did not provide it with a timely notice of disclaimer. As the Congregation correctly notes, an untimely notice of disclaimer would bar U.S. Underwriters from disclaiming coverage under the independent contractors exclusion.

In order for an insurer effectively to disclaim liability, Section 3420(d) of New York's Insurance Law requires the insurer to give written notice to the insured of its intention to disclaim coverage "as soon as reasonably possible." *See also Hartford Ins. Co. v. County of Nassau,* 46 N.Y.2d 1028, 1029, 416 N.Y.S.2d 539, 389 N.E.2d 1061 (1979). The reasonableness of any delay in notification must be determined "from the time the insurer was aware of sufficient facts to disclaim." *Ward v. Corbally, Gartland & Rappleyea,* 207 A.D.2d 342, 615 N.Y.S.2d 430, 431 (2d Dep't 1994); *Interboro Mut. Indem. Ins. Co. v. Rivas,* 205 A.D.2d 536, 613 N.Y.S.2d 191, 191 (2d Dep't 1994). The insurer has the burden of demonstrating that any delay was reasonable, *Ward,* 207 A.D.2d 342, 615 N.Y.S.2d at 431, and the insured need not demonstrate prejudice in cases, like this one, which are governed by § 3420(d). *All City Ins. Co. v. Pioneer Ins. Co.,* 194 A.D.2d 424, 599 N.Y.S.2d 245 (1st Dep't 1993).

As with a notice-of-occurrence claim, questions of fact concerning the reasonableness of the delay in a notice of disclaimer are generally reserved for the trier of fact. *Hartford Ins. Co.,* 416 N.Y.S.2d at 540, 389 N.E.2d at 1062. When the grounds for a disclaimer are readily apparent from the notice of claim, New York courts have found even short delays unreasonable as a matter of law. *See, e.g., Interboro Mut. Indem. Ins. Co.,* 205 A.D.2d 536, 613 N.Y.S.2d at 192 (unexplained five-month delay in disclaiming coverage of uninsured motorist on ground of untimely notice unreasonable as a matter of law); *Ward,* 207 A.D.2d 342, 615 N.Y.S.2d at 432 (same; two-month delay); *Aetna Casualty and Surety Co. v. Rosen,* 205 A.D.2d 684, 613 N.Y.S.2d 664 at 665 (1994) (same).

put an insured on notice of the necessity of contacting the insurer. *See, e.g., Heydt Contracting Corp.,* 146 A.D.2d 497, 536 N.Y.S.2d at 772 (building damaged by fire); *Power Auth. v. West-* *inghouse Elec. Corp.,* 117 A.D.2d 336, 502 N.Y.S.2d 420 (1st Dep't 1986) (electric transformer broken in transport).

However, New York courts have consistently held that an insurer must be given reasonable time to adequately investigate a claim in order to determine whether it wishes to disclaim coverage. *In re Prudential Property & Casualty Ins. Co.*, 213 A.D.2d 408, 623 N.Y.S.2d 336, 336 (2d Dep't 1995) (two-month delay reasonable when used to investigate status of insured's driver's license); *Hartford Ins. Co.*, 416 N.Y.S.2d at 541, 389 N.E.2d at 1063 ("a two-month delay may often be easily justified" if an explanation is given by the insurer).

The Congregation argues that the notice of disclaimer was untimely for two reasons. First, it asserts that it was never properly served with the notice. It does not dispute that such a notice can be accomplished by service of a summons and complaint seeking declaratory judgment, but argues that U.S. Underwriters failed to serve the Congregation. This argument is, to put it charitably, disingenuous.

U.S. Underwriters served its summons and complaint at 204 Keap Street, Brooklyn. The president of the Congregation testified that this was one of the buildings used by Yeshiva Shearith Hapletah and The Beth Chana School For Girls. (Trachman Decl., Ex. C at 27–28.) The papers were quickly given to Rabbi Silberman, who promptly directed that the president of the Congregation be notified as well. (Trachman Decl., Ex. A. at 43.) The president admits that he received such notification in January of 1994. (Trachman Decl., Ex. C at 41–42.) Thus, it is undisputed that Rabbi Silberman, who acted for the Congregation in all matters relating to the renovations and the subject insurance policy, was served with the disclaimer.[5] Although that would alone be sufficient, it is further undisputed that the nominal president of the Congregation also received actual notice of the disclaimer as well. I conclude that there is no genuine issue of material fact created by the Congregation's surprising contention that it did not receive notice of the disclaimer.

The Congregation's second argument is that even if the notification was made, U.S. Underwriters' delay of over two months between its receipt of the notice of claim from Rabbi Silberman and its notice of disclaimer was unreasonable. U.S. Underwriters has established, by affidavit and deposition testimony, as follows: its agent received a copy of the underlying summons and complaint (from Rabbi Silberman) on November 5, 1993; U.S. Underwriters itself received those papers within a week and immediately, by letter dated November 11, 1993, requested an investigation by J & N Investigation & Claims Service ("J & N") into, *inter alia*, the relationship between the Congregation and Sais Construction and whether the notice of claim was timely. (Sklarin Reply Decl., Ex. A.) J & N issued its report on December 9, 1993, which included the statements by Rabbi Silberman that provided the factual predicate for the disclaimer. The report was received by U.S. Underwriters within a few days of December 9, 1993, and it filed this declaratory judgment action on December 22, 1993. Service was effected on January 12, 1994.

In short, U.S. Underwriters has "submitted proof that the delay in disclaiming was based upon its prompt, diligent and good faith investigation with respect to coverage." *Wilczak v. Ruda & Capozzi, Inc.*, 203 A.D.2d 944, 611 N.Y.S.2d 73 (4th Dep't 1994) (reversing summary judgment for insured where insurer's two-month delay was the result of investigation regarding coverage).

The Congregation has not controverted any of these facts. (*See* Defs.' Statement of Material Facts Pursuant to Local Rule 3(g).) Rather, it asserts that, to the extent that the disclaimer is based on an alleged late notice of claim, no investigation was required because the date of the accident was set forth in Eskandar's complaint. (Defs.' Mem. at 5.) However, the mere fact that the Congregation's notice was not provided until Eskandar brought suit does not by itself establish a late-notice defense, especially where, as here,

---

5. With respect to complying with its own obligation to provide a timely notice of claim, the Congregation is quick to rely on the actions of Rabbi Silberman. (*See, e.g.*, Trachman Decl.,

¶ 17; Defs.' Mem. at 8–11). When the issue is *receiving* notice, however, the Congregation asserts that Rabbi Silberman was not its agent. (Defs' Mem. at 3.)

the theory of liability is the strict liability of an owner under provisions of New York's Labor Law. The investigation established that Rabbi Silberman had in fact been aware of the accident shortly after it happened; only then, after receiving this information in the investigator's report, did U.S. Underwriters possess sufficient facts to disclaim on this ground.

Moreover, U.S. Underwriters had an independent reason to initiate an investigation: the potential applicability of the independent contractors exclusion. While the availability of this ground for disclaimer was arguably apparent from the face of Eskandar's pleading, the Congregation provides no reason to doubt the *bona fides* of U.S. Underwriters' stated desire to learn whether there was a written contract with Sais Construction and whether the Congregation "furnished any ladders, scaffolding, etc. to [Eskandar] or his employer." (Sklarin Reply Decl., Ex. A.) Moreover, I can conceive of no reason to discourage such investigations by insurers before they disclaim, particularly where, as here, the investigation is requested and completed promptly. Finally, the appropriateness of the late-notice investigation would forgive a tardy disclaimer based on the exclusion clause in any event, as "piecemeal denials of coverage would frustrate [the insurer's] right to investigate claims." *Wilczak*, 203 A.D.2d 944, 611 N.Y.S.2d at 73.

Finally, the Congregation contends that U.S. Underwriters failed to satisfy its obligation to provide written notice of disclaimer to the "insured," as required by Insurance Law § 3420(d), because it failed to serve all six of the entities who are collectively defined as the "insured" in the policy. Since only the Congregation has been sued by Eskandar, and only the Congregation seeks coverage, it is not clear what purpose would be served by notifying the other entities of the disclaimer, and the Congregation does not suggest any. In any event, for all purposes relevant to the subject policy, the undisputed facts establish conclusively that Rabbi Silberman acts for all of the named "insureds" who have any connection with 620 Bedford Avenue, Brooklyn, and that he was adequately served with the summons and complaint that constituted the notice.

I am aware that the reasonableness of an insurer's delay in disclaiming coverage is frequently a question of fact requiring trial. *See, e.g., Wilczak, supra.* However, I conclude, based on the affidavits, depositions and other submissions made in connection with these motions, that the Congregation has failed to establish that there are genuine issues of material fact requiring trial. The insurer in this case received a notice of claim and immediately requested an investigation, which was completed in less than a month. That investigation provided the predicate facts for the disclaimer. The insurer brought this declaratory judgment action approximately 10 days later (and only 13 days after the report was completed.) The Congregation was served exactly three weeks later, and those three weeks included the end-of-year holiday season.

Based on those facts, about which there is no genuine issue, I conclude that no rational juror could find the delay in disclaiming to be unreasonable. *See Gallo v. Prudential Residential Services*, 22 F.3d 1219, 1224 (2d Cir. 1994). Accordingly, I deny the Congregation's motion for summary judgment, and conclude that its late-notice-of-disclaimer contention is insufficient to defeat U.S. Underwriters' motion for summary judgment based on the exclusion clause.

### CONCLUSION

The independent contractors exclusion applies to Eskandar's claim against the Congregation. U.S. Underwriters timely notified the Congregation of its intention to disclaim coverage. Accordingly, U.S. Underwriters' motion for summary judgment is granted, and judgment will be entered declaring that U.S. Underwriters is not obligated to defend or indemnify the Congregation with respect to Eskandar's action against the Congregation.

So Ordered.