Guy **PALANQUET** and Mary Palanquet, Plaintiffs,

v.

**WEEKS MARINE, INC.,** Defendant.

Weeks Marine, Inc., Third–Party Plaintiff,

v.

**C.B. Contracting Corp. and United States Fire Insurance Company,** Third–Party Defendants.

No. CV 00–1509(ETB).

United States District Court, E.D. New York.

Aug. 30, 2004.

Andrew R. Diamond, Sacks And Sacks, Esqs., Mark S. Kundla, Hardin, Kundla, Mckeon, Poletto & Polifroni, P.A., Michael S. Brown, New York City, for Plaintiffs.

Michael S. Brown, Mark S. Kundla, Hardin, Kundla, Mckeon, Poletto & Polifroni, P.A., Christopher Carroll, Ann Odelson (on brief and reply papers), Carroll McNulty & Kull, New York City, for Defendants.

## MEMORANDUM OPINION AND ORDER

BOYLE, United States Magistrate Judge.

Before the court are three applications for summary judgment, pursuant to Federal Rule of Civil Procedure 56. Plaintiffs, Guy and Mary Palanquet ("plaintiffs") seek judgment as a matter of law establishing the liability of defendant, Weeks Marine, Inc. ("Weeks"), for violation of Section 240(1) of the New York Labor Law. Weeks and third-party defendant, C.B. Contracting Corp. ("C.B."), oppose the plaintiffs' motion. Additionally, Weeks requests summary judgment granting a declaratory judgment against third-party defendant, United States Fire Insurance Company ("US Fire"), for defense and, if necessary, indemnification in plaintiffs' underlying personal injury action. US Fire opposes Weeks' motion. Alternatively, U.S. Fire seeks summary judgment on the issue of defense and indemnification in its favor and also moves the court to have the third-party action severed from the main action. For the following reasons, the plaintiffs' motion for summary judgment is granted, U.S. Fire's cross-motion for summary judgment is granted, and Weeks' motion for summary judgment is denied.

## FACTS

On November 13, 1996, the Department of Transportation of the State of New York entered into a written contract with Weeks Marine, Inc. to perform reconstruction and rehabilitation of the Robert Moses Causeway (South Bound) Bridge over the Great South Bay in the town of Islip. (Palanquet 56.1 Statement ¶ 1; Weeks Resp. to Palanquet's 56.1 Statement ¶ 1.) Pursuant to the written contract between the Department of Transportation and Weeks, Weeks was to furnish all materials, appliances, tools and labor required for the construction and completion of the project on the Robert Moses Causeway. (Palanquet 56.1 Statement ¶ 1; Weeks Resp. to Palanquet's 56.1 Statement ¶ 1.) On December 9, 1997, Weeks entered into a written contract with C.B. Contracting Corp., whereby C.B. agreed to perform certain work in connection with the project on the Robert Moses Causeway. (Palanquet 56.1 Statement ¶ 2; Weeks Resp. to Palanquet 56.1 Statement ¶ 2.) The contract between Weeks and C.B. required C.B. to purchase a comprehensive general liability policy naming Weeks as an additional insured. (Subcontract Agreement between Weeks and CB dated Dec. 9, 1997, ¶ 6, annexed as Ex. 2 to Pl.'s 56.1 Statement.) CB was obligated to "defend, indemnify and hold Weeks harmless from and against all claims, actions, losses, damages, liabilities ... for ... injury to .... any person arising out of or in connection with the Work Items or the performance thereof by ... [CB] its employees or Agents. (*Id.* ¶ 5.) Effective April 18, 1998, United States Fire Insurance Company provided C.B. Contracting with a comprehensive general liability policy that allowed for "additional insured" coverage with two main exclusions: (i) if bodily injury or property inju-

ry arises from the additional insured's own acts or omissions; or, (ii) if bodily injury or property injury arises from the "use" of a "watercraft." (Ex. I annexed to the Decl. of Christopher Carroll (hereinafter "Carroll Decl."), dated Dec. 18, 2003.)

Plaintiff, Guy Palanquet, a Local 46 metal lather, was employed by C.B. and was assigned to work on the project at the Robert Moses Causeway on December 4, 1998. (Palanquet 56.1 Statement ¶ 3; Weeks Resp. to Palanquet 56.1 Statement ¶ 3.) Weeks was the general contractor for that project. (Palanquet 56.1 Statement ¶ 5; Weeks Resp. to Palanquet 56.1 Statement ¶ 5.) According to the deposition of David Vosseller ("Vosseller"), a project manager for Weeks, Weeks used approximately twenty different barges on the Robert Moses Causeway project. (Dep. of David Vosseller (hereinafter "Vosseller Dep.") dated May 7, 2002, at 37, annexed to Palanquet 56.1 Statement at Ex. 4.) Barges were either "spudded"[1] in place or tied to the bridge itself at a location where construction needed to be performed on the bridge (id. at 46) and Weeks had the sole responsibility of securing the barges. (U.S. Fire 56.1 Statement ¶ 4; Weeks Resp. to U.S. Fire 56.1 Statement ¶ 3.) Vosseller further testified that Weeks provided ladders, scaffolding, and man lifts when workers needed to access the bridge from the various barges. (Vosseller Dep. at 40, 42.) Other safety equipment that Weeks provided to its subcontractors were work vests. Weeks instructed subcontrac-

tors to wear hard hats if they were not already wearing one. (Id. at 60.)

C.B. Contracting was hired by Weeks to install concrete reinforcement on the surface of the bridge by bending and installing reinforced steel for concrete. (Id. at 11, 37.) According to the deposition of Lesly Gourgue ("Gourgue"), a foreman for C.B. Contracting, C.B. only provided a bending machine to bend steel; all other equipment and materials were provided by Weeks. (Dep. of Lesly Gourgue (hereinafter "Gourgue Dep.") dated Sept. 23, 2002, at 8, annexed to Palanquet 56.1 Statement at Ex. 5.) Gourgue also testified that neither Weeks nor C.B. provided any safety ropes or safety belts. (Id. at 17–18.) Testimony showed that Weeks hired several other subcontractors and they would, at times, provide their own equipment, including but not limited to ladders. (Vosseller Dep. at 11, 67.)

Plaintiff alleges that on December 4, 1998, at approximately 12:35 p.m., while he was performing work on the Robert Moses Causeway from a barge that was secured to the bridge, he was given orders by Gourgue to climb a ladder that was connected to the bridge. (Palanquet 56.1 Statement ¶ 7; Weeks Resp. to Palanquet 56.1 Statement ¶ 7.) The ladder was attached to the bridge by two ropes at the top of each side of the ladder. (Dep. of Guy Palanquet (hereinafter "Palanquet Dep.") dated Feb. 8, 2002, at 102, annexed to Palanquet 56.1 Statement at Ex. 3;

---

1. Spudding is a process by which a number of poles are put out from a dredger or, in this case, a barge, and stuck into the bed or bank of the body of water so as to keep the vessel stationary. Spuds hold the hull still while the dredge is working. "There are three of them, one at the center of the stern and one at each side near the front end. The rear spud is always vertical and consists of a heavy timber with a pointed iron shoe at its lower end which moves in a box or guide frame attached to the hull. When lowered, the pointed end is forced into the bottom of the ditch or river and prevents the rear end of the hull from moving. The spud is raised by a cable operated by the spud engine. The side spuds may be either vertical or inclined. Inclined spuds are fastened to the A-frame and their lower ends rest on the banks, hence they are called bank spuds." OXFORD ENGLISH DICTIONARY, available at http://www.dictionary.oed.com.

Gourgue Dep. at 14–15.) Palanquet claims that the ropes were "looped" around bolts that protruded from the bridge (Palanquet Dep. at 52), however Gourgue claims that the ropes were "tied" to the bridge in knots. (Gourgue Dep. at 15.) There is no indication that the ladder was nailed or otherwise secured to the surface of the barge at the base (*id.* at 40), which was occasionally the practice of Weeks. (Vosseller Dep. at 67.) Palanquet alleges that as he proceeded to climb up the ladder, due to heavy water conditions, the bottom of the ladder swung from side to side causing him to fall and sustain injury to his back and wrist. (Palanquet Dep. at 51–52; Palanquet 56.1 Statement ¶ 10.) Gourgue testified that the ladder twisted at the bottom. (Gourgue Dep. at 39.)

During Gourgue's deposition, testimony revealed that Gourgue and Palanquet were involved in an automobile accident prior to the incident on the Robert Moses Causeway. (*Id.* at 27.) The car accident occurred on November 17, 1998, approximately two weeks prior to the incident at issue herein. (Ex. C annexed to the Decl. of Edward S. Benson (hereinafter "Benson Decl."), dated Dec. 18, 2003.) According to Gourgue, Palanquet was sitting in the passenger seat when their vehicle was struck from behind. (Gourgue Dep. at 27–29.) Gourgue testified that Palanquet did not sustain any injuries from that accident and was able to continue working. (*Id.* at 46.) Palanquet failed to mention the prior accident during his deposition, however medical records indicate that during his medical examinations, Palanquet stated that he sustained injuries to his neck, lower back, and right knee in the prior accident. (Benson Decl., Ex. C.)

Palanquet alleges that Weeks acted negligently in violation of Sections 200, 240(1), and 240(6) of the New York Labor Law but seeks summary judgment on the issue of liability solely with respect to Weeks' alleged violation of § 240(1) the New York Labor Law. (Palanquet 56.1 Statement ¶ 3.) Following the commencement of this action by Palanquet, Weeks impleaded both C.B. and U.S. Fire and seeks summary judgment declaring that U.S. Fire must defend and, if necessary, indemnify Weeks in the underlying personal injury action. (Benson Decl. ¶ 2.) U.S. Fire filed a cross-motion seeking summary judgment declaring that Weeks is not entitled to additional insured status and is not entitled to defense and indemnification under its comprehensive general liability policy with C.B. Contracting. (Carroll Decl. ¶ 2.) U.S. Fire also seeks to have the third-party action severed from the main action. (Carroll Decl. ¶ 36.)

## *DISCUSSION*

### I. *Summary Judgment Standard*

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden is on the moving party to establish the lack of any factual issues. *See id.* The very language of this standard reveals that an otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The requirement is that there be no "genuine issue of material fact." *Id.* at 248, 106 S.Ct. 2505.

The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). When a moving party has carried its burden, the party opposing summary judgment must do more than simply show that "there is some metaphysical doubt as to the material facts." *Id.* at 586, 106 S.Ct. 1348. Under Rule 56(e), the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

## II. *Palanquet's Motion for Summary Judgment*

■■■ Palanquet's personal injury suit is before the court as a diversity action and thus New York State substantive law is applicable. *See Quinn v. Teti*, 234 F.3d 1262, 2000 WL 1616806, at *2 (2d Cir.2000) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). In New York, actions for negligence require proof to support the essential elements of: (1) duty; (2) breach; (3) causation; and (4) damages. *See Sawyer v. Marriott Int'l Inc.*, 196 F.Supp.2d 220, 226 (E.D.N.Y.2002); *Denman v. Coppola Gen. Contracting Corp.*, 256 A.D.2d 1050, 683 N.Y.S.2d 617, 618 (3d Dep't 1998). According to New York Labor Law §§ 200, 240(1), and 241(6), plaintiffs performing construction work are afforded greater protection under these statutes and may raise negligence claims in accordance with these statutes. *See generally Ross v. Curtis–Palmer Hydro–Elec. Co.*, 81 N.Y.2d 494, 601 N.Y.S.2d 49, 618

N.E.2d 82 (1993) (noting that plaintiff raised his negligence claim under §§ 200, 240(1), and 241(6), but found that plaintiff only presented triable issues under § 200). Palanquet seeks summary judgment establishing the liability of Weeks Marine pursuant to § 240(1) of the New York Labor Law. However, since the injury occurred on a barge situated on navigable waters, the court must first determine whether the action demands the application of federal maritime law instead of New York State substantive law.

### A. *Federal Maritime Law Does Not Apply to this Action*

■■■ It is well established that federal admiralty jurisdiction applies to tort claims where: (1) the alleged injury occurs on navigable waters, and (2) the wrong bears "[a] significant relationship to traditional maritime activity." *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 268, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972); *Lingo v. Great Lakes Dredge & Dock Co.*, 638 F.Supp. 30, 31 (E.D.N.Y. 1986). When looking at the "wrong" that bears a significant relationship to traditional maritime activity, the focus is on the defendant's activities, not on the injured individual's activities. *See Lingo*, 638 F.Supp. at 33. When the "wrong" arises from the repair of a bridge, it is important to determine the purpose of the repair to see if there is a significant connection to traditional maritime activity. *See Gravatt v. City of New York*, No. 97–0354, 1998 WL 171491, at *12 (S.D.N.Y. April 6, 1998) (finding that the repair and placement of the "fender system" [2] around the base of the bridge was designed to prevent boats from hitting the bridge, which was an aid to navigation). *But see Shea v. Rev–Lyn*

2. The court described this as follows: "The fender system ... is a structure that looks like a pier, which is attached to and surrounds the

stone and mortar center stanchion of the bridge." *Gravatt*, 1998 WL 171491, at *2.

*Contracting Co.,* No. 84–3700, 1988 U.S. Dist. LEXIS 17945, at *4–6 (D. Mass. June 2, 1988) (stating generally that the repair of bridges *may* be important to the "flow of maritime commerce," but concluding that the repair of the underside of the bridge is outside the admiralty jurisdiction of the federal courts) (emphasis added).

■ Weeks was hired by the State of New York to perform the reconstruction and rehabilitation of the Robert Moses Causeway, and as the general contractor, was to provide all materials, appliances, tools and labor required for the completion of the project. Weeks' alleged "wrong" is the negligent failure to provide and maintain safe access to the work area—the surface of the bridge—from a barge that was intended to serve as a platform. Although the injury occurred on navigable waters, the reconstruction and rehabilitation of the Robert Moses Causeway and the alleged negligent failure to provide safe access to a construction area here do not bear a "significant relationship to traditional maritime activity." *Executive Jet Aviation,* 409 U.S. at 268, 93 S.Ct. 493. Unlike the repair of a "fending system" to aid navigation in waters, *Gravatt,* 1998 WL 171491, at *12, the repair of the side surface of a bridge has little effect on the navigation of vessels in the waters below. The injury and the acts leading to the injury could have occurred on a construction site where admiralty jurisdiction would not be applicable. Despite the situs of the injury occurring on navigable waters, I find that federal maritime law is inapplicable because the "wrong" lacks an adequate relationship to traditional maritime activity. Moreover, even assuming *arguendo* that federal admiralty jurisdiction is applicable here, plaintiffs' claim under the New York Labor Law would not be preempted. *See Gravatt,* 1998 WL 171491, at *14 (finding that the strict liabil-ity theories under the New York Labor Laws are not inconsistent with maritime law); *see also Cammon v. City of New York,* 95 N.Y.2d 583, 590, 721 N.Y.S.2d 579, 744 N.E.2d 114 (2000) (finding that New York Labor Law provisions allowing liability predicated on fault are consistent with federal maritime principles).

### B. *New York Labor Law § 240(1) Liability*

New York Labor Law § 240(1) provides, in pertinent part:

> All contractors and owners ... shall furnish or erect, or cause to be furnished or erected ... scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed, and operated as to give proper protection [to construction workers employed on the premises].

N.Y. Labor Law § 240(1) (2004).

■ Section 240(1) was designed to place the responsibility of a worker's safety squarely upon the owner and contractor. The statute is "liberally construed" to achieve its objectives. *Felker v. Corning, Inc.,* 90 N.Y.2d 219, 224, 660 N.Y.S.2d 349, 682 N.E.2d 950 (1997). The statute imposes a nondelegable duty on owners and contractors, and if breached, the owner or contractor may be held liable in damages regardless of whether it actually exercised supervision or control over the work. *See Ross,* 81 N.Y.2d at 500, 601 N.Y.S.2d 49, 618 N.E.2d 82. Strict liability is imposed upon the owner or contractor where: (1) the plaintiff can establish that the statute was violated and (2) the plaintiff's injury was proximately caused by the violation. *See Jimenez v. New York City Sch. Constr. Auth.,* No. 99 Civ. 8707, 2000 WL 1804146, at *3, 2000 U.S. Dist. LEXIS 17786, at *9 (S.D.N.Y.2000) (citations omitted).

■ Moreover, in accordance with the strict liability of the statute, contributory negligence is not a defense to a claim under Section 240(1). *See Stolt v. Gen. Foods Corp.*, 81 N.Y.2d 918, 920, 597 N.Y.S.2d 650, 613 N.E.2d 556 (1993). Nor is the plaintiff's assumption of risk a defense. *See Long v. Murnane Assoc., Inc.*, 68 A.D.2d 166, 416 N.Y.S.2d 413, 415 (3d Dep't 1979).

■ The protections afforded by Section 240(1) are intended for "elevation-related hazards," *Ross*, 81 N.Y.2d at 500, 601 N.Y.S.2d 49, 618 N.E.2d 82, and in the absence of *any* safety device providing "proper protection" for elevation-related hazards, strict liability is imposed upon the owner or contractor regardless of whether safety devices were present "somewhere at the worksite." *Zimmer v. Chemung County Performing Arts, Inc.*, 65 N.Y.2d 513, 524, 493 N.Y.S.2d 102, 482 N.E.2d 898 (1985). An owner or contractor may still have a "recalcitrant worker" defense, but only upon a showing that the injured worker refused to use a safety device that was provided. *Gordon v. Eastern Ry. Supply, Inc.*, 82 N.Y.2d 555, 563–64, 606 N.Y.S.2d 127, 626 N.E.2d 912 (1993) (finding that evidence of instructions by an employer or owner to avoid using unsafe equipment or engaging in unsafe practices is not a "safety device" in the sense that the plaintiff's failure to comply with the instructions supports a recalcitrant worker defense).

■ At the time of the incident herein, plaintiff was employed to perform metal lather work on the Robert Moses Causeway and was instructed to access the bridge from a ladder situated on a barge. Although Weeks does not dispute the fact that the plaintiff fell from a ladder attached to the barge, Weeks argues that it was not the entity responsible for securing the ladder, nor was it the entity that owned the ladder. Weeks' argument is immaterial to the disposition of this case because despite any disputed evidence as to the ownership of the ladder and whose responsibility it was to secure the ladder, the only safety device provided to the plaintiff was a work vest. (Vosseller Dep. at 60; Gourgue Dep. at 17–18.) Although a work vest may be considered "at least one" safety device, a work vest is not a device that provides "proper protection" for a foreseeable fall from a ladder, which is an elevation-related hazard. *See Ekere v. Airmont Indus. Park*, 249 A.D.2d 104, 671 N.Y.S.2d 476, 477 (1st Dep't 1998) (finding that the plaintiff was entitled to the protection of Labor Law § 240(1) where plaintiff was not provided with scaffolding or any other safety device when working from a ladder). The failure to provide a proper safety device, such as a safety rope or a safety harness, was a substantial cause of the plaintiff's foreseeable fall and the injuries he sustained. Since Weeks, as the general contractor in charge of the supervision of the worksite, did not equip plaintiff with any safety device that provided adequate protection from an elevation-related hazard, I find that Weeks violated Section 240(1) of the New York Labor Law and accordingly, that Weeks is liable for plaintiff's injuries pursuant to Section 240(1) [3].

Based on the foregoing, plaintiff's motion for summary judgment establishing the liability of Weeks under New York Labor Law § 240(1) is granted.[4] Dam-

---

**3.** The court also finds that Weeks does not possess a "recalcitrant worker" defense because the plaintiff could not refuse to use any safety device since no such proper safety de- vices were provided. *Gordon*, 82 N.Y.2d 555, 563–64, 606 N.Y.S.2d 127, 626 N.E.2d 912.

**4.** The plaintiff does not seek summary judg- ment under New York Labor Laws §§ 200 or

ages will be determined at a jury trial to be scheduled at a later date.[5]

### III. Weeks' Motion and U.S. Fire's Cross–Motion for Summary Judgment

Weeks seeks summary judgment declaring that U.S. Fire must defend and, if necessary, indemnify Weeks in the underlying personal injury action with Palanquet. In turn, U.S. Fire, the general coverage provider for C.B. Contracting, has cross-moved for summary judgment declaring that Weeks is not entitled to "additional insured status" and is not entitled to defense and indemnification under its comprehensive general liability policy with C.B. Contracting. For the following reasons, Weeks' motion for summary judgment is denied and U.S. Fire's cross-motion for summary judgment is granted.

#### A. Background

The contract between Weeks and C.B. provides, in pertinent part:

> Subcontractor assumes, and shall defend, indemnify and hold Contractor harmless from and against all claims, actions, losses, damages, liabilities, costs, legal fees and expenses for damage to property or injury to or death of any person, caused by or resulting from any act or failure to act of Subcontractor, its employees or agents, arising out of or in connection with the Work Items or performance thereof by Subcontractor, its employees or agents.

(Subcontract Agreement between Weeks and C.B. Contracting dated Dec. 9, 1997, ¶ 5, annexed as Ex. D to Carroll Decl.)

> Subcontractor shall maintain policies of insurance with respect to the Work Items and its performance thereof, including contractual liability coverage for the Subcontractor's obligation to Contractor provided in paragraph 5 above ... The insurance polices shall name Contractor as additional insured....

(Id. ¶ 6.)

On April 18, 1998, U.S. Fire issued a general comprehensive liability policy to C.B. Contracting. Section II of the policy, labeled "Who is an Insured," located in the Commercial General Liability Coverage Form, governs who is afforded coverage under U.S. Fire's policy. (Form CG 00010196, at 7–8, annexed as Ex. E to Benson Decl.) Section II is modified by two disputed provisions, which purport to set the parameters of who is an "additional insured." The two provisions are as follows:

The General Liability Enhancement Endorsement ("GLEE") states, in pertinent part:

> This endorsement modifies insurance provided by the Commercial General Liability Coverage Form.
>
> XIII. Additional Insured by Written Contract
>
> Section II—WHO IS AN INSURED is amended to include as an additional in-

---

241(6), but requests the court to consider Weeks' liability under those statutes as a supplement to liability under § 240(1). Since I find that Weeks violated § 240(1) and am imposing liability pursuant to that section, I find it unnecessary to consider Weeks' liability under §§ 200 and 241(6).

5. Outstanding issues of fact still remain regarding plaintiff's prior automobile accident. During oral argument, all parties conceded that the plaintiff suffered injuries during the incident on December 4, 1998. However, evidence showing that the plaintiff was involved in an automobile accident approximately two weeks prior to the December 4, 1998 incident has been presented to the court. This evidence creates a genuine issue of material fact as to the extent of Palanquet's injuries from the December 4, 1998 incident.

sured any person or organization whom you are required to add as an additional insured to this policy by a written contract or written agreement that is:

(1) currently in effect or becoming effective during the term of this policy; and

(2) executed prior to the "bodily injury", "property damage", "personal injury" or "advertising injury"

A. The insurance provided to the additional insured applies as follows:

1. That person or organization is only an additional insured with respect to liability caused by your negligent acts or omissions at or from:

 (b) your ongoing operations performed for the additional insured at the job indicated by written contract or written agreement.

(Form FM 101.0.14610395, at 1, 4, annexed as Ex. E to Benson Decl.)

The other provision, Additional Insured—Owners, Lessees or Contractors—Scheduled Persons or Organization (For Use When Contractual Liability Coverage Is Not Provided To You In This Policy) ("OLC") states, in pertinent part:

 This endorsement modifies insurance provided under the following: Commercial General Liability Coverage

 Name of Person Or Organization (Additional Insured):

 Any person or organization required by written contract to be named as additional insured for whom operations are being performed by or on behalf of the named insured; or to whom a certificate of insurance is issued by the Agent of the Company naming that person or organization as an additional insured.

 A. Who is An Insured (Section II) is amended to include as an insured the person or organization (called "additional insured") . . . but only with respect to liability arising out of:

 1. Your ongoing operations performed for the additional insured(s) at the location designated above; or

 2. Acts or omissions of the additional insured(s) in connection with their general supervision of such operations

B. With respect to the insurance afforded these additional insureds, the following additional provisions apply:

 2. Additional Exclusions

 This insurance does not apply to:

 c. "Bodily injury" or "property damage" arising out of any act or omission of the additional insured(s) or any of their "employees" other than the general supervision by the additional insured(s) of your ongoing operations performed for the additional insured(s).

(Form CG 20090397, at 1, annexed as Ex. E to Benson Decl.)

The Commercial General Liability Coverage Form also contains an exclusion entitled, "Aircraft, Auto or Watercraft," which states, in pertinent part:

 This insurance does not apply to:

 g. Aircraft, Auto or Watercraft

 "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any . . . watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

 This exclusion does not apply to:

 (2) A watercraft you do not own that is:

 (a) Less than 26 feet long; and

 (b) Not being used to carry persons or property for a charge

(Form CG 00010196, at 1, 3, annexed as Ex. E to Benson Decl.)

Pursuant to the action initiated by Palanquet, Weeks first tendered its defense to U.S. Fire on August 16, 1999 and Weeks asserted that it was an additional insured under the policy issued to C.B. and requested that U.S. Fire provide defense and indemnification. (Letter of Weeks to U.S. Fire dated Aug. 16, 1999, annexed as Ex. E to Carroll Decl.) On August 31, 1999, U.S. Fire acknowledged Weeks' tender and responded with a request for a copy of the subcontract between Weeks and C.B., while reserving its rights under its policy. (Letter of U.S. Fire to Weeks dated August 31, 1999, annexed as Ex. E to Carroll Decl.) U.S. Fire made several additional requests for a copy of the subcontract between Weeks and C.B., however Weeks stated that, due to difficulties, it would not be able to produce a copy of the subcontract in a timely manner. (Weeks 56.1 Statement ¶ 7.) On January 3, 2000, U.S. Fire acknowledged Weeks' tender of defense, but denied Weeks' request for defense and indemnification, reserving its right to reevaluate its position if the requested subcontract was provided. (Letter of U.S. Fire to Weeks dated Jan. 3, 2000, annexed as Ex. E to Carroll Decl.) Subsequently, in a letter to U.S. Fire, dated January 14, 2000, Weeks acknowledged U.S. Fire's denial of coverage and requested that U.S. Fire reevaluate its position pursuant to the requested and attached copy of the subcontract between Weeks and C.B. (Letter of Weeks to U.S. Fire dated Jan. 14, 2000, annexed as Ex. E to Carroll Decl.) On March 22, 2000, U.S. Fire sent a letter to Weeks acknowledging Weeks as an "additional insured" under the insurance policy issued to C.B., but stating that U.S. Fire was not able to render a coverage decision because of "unknown factual information" regarding the underlying accident with Palanquet. (Letter of U.S. Fire to Weeks dated March 22, 2000, annexed as Ex. E to Carroll Decl.)

By that same letter, U.S. Fire advised Weeks that it should refer the matter to its own insurance carrier, believed to be Commercial Underwriter, and also reserved its right to render coverage for Weeks at a later point. (*Id.*)

Weeks contends that U.S. Fire is obligated to defend or indemnify Weeks for the following reasons: (1) Weeks argues that it is an "additional insured" as provided under the OLC provision, which Weeks argues is controlling because of the typewritten "Name of Person or Organization (Additional Insured)" clause and also because contractual liability coverage was "not provided to [Weeks]" in U.S. Fire's policy; (2) the watercraft exclusion does not apply in the present situation because the subject barge cannot be considered a "watercraft;" and, (3) U.S. Fire is barred from any exclusions because of its failure to make a timely disclaimer of coverage. US Fire, on the other hand, argues that coverage is provided under the GLEE Endorsement and therefore Weeks is barred from coverage under the OLC Endorsement.

B. *Weeks is an Additional Insured Under the OLC Provision*

 This dispute arises under an insurance policy issued in New York by a New York insurance provider. *See* Schedule of Locations, annexed as Ex. I to Carroll Decl. (stating that U.S. Fire's coverage policy was issued to C.B.'s location in Staten Island, New York); *see also* Third-Party Compl. ¶¶ 8, 10, annexed as Ex. G. to Carroll Decl.; Third-Party Answer ¶¶ 8, 10, annexed as Ex. H. to Carroll Decl. (stating that U.S. Fire is incorporated under the laws of the State of New York). Furthermore, the incident giving rise to the underlying action occurred in New York and is in this court on the basis of diversity jurisdiction. The court will

therefore apply the insurance law of the State of New York. *See U.S. Underwriters Ins. Co. v. 614 Constr. Corp.*, 142 F.Supp.2d 491, 494 (S.D.N.Y.2001) (citations omitted).

■ Under New York law, a court must give unambiguous provisions of insurance contracts their plain and ordinary meaning and when an ambiguity is found in the provisions, any doubt about the existence of insurance coverage should be resolved in favor of the insured and against the insurance carrier. *See U.S. Underwriters Ins. Co. v. Congregation B'Nai Israel*, 900 F.Supp. 641, 644 (E.D.N.Y.1995) (applying New York insurance law). It is undisputed that the GLEE provision and the OLC provision both purport to modify the section labeled "Who is An Insured" in Section II of the Commercial General Liability Form. The GLEE and the OLC both require that there be a written agreement between C.B. and Weeks and they both state that the additional insured will only be granted coverage for liability resulting from C.B.'s "ongoing operations performed" for Weeks, the purported "Additional Insured." The difference between the two provisions is that the GLEE grants to Weeks coverage as an additional insured upon a showing that the liability was caused by C.B.'s negligent acts or omissions. Such is not the case here. It is Weeks' violation of Labor Law § 240(1) which is the basis for liability.

■ The OLC provision is controlling here. Liability arises as a result of the acts or omissions of Weeks for which it was added as an additional insured. US Fire argues that the language "For Use When Contractual Liability Coverage is Not Provided You In This Policy" should be construed to exclude coverage to Weeks since Weeks was provided coverage for any liability arising from the negligence of

CB under the GLEE Endorsement. I do not do so for the following reasons. Coverage under the GLEE Endorsement is not operative here since liability is based on Weeks' violation of Section 240(1) and not based on CB's negligence. Secondly, the exclusive language on which U.S. Fire relies is the Title or Caption of the Endorsement—"Additional Insured–Owners, Lessees or Contractors—Scheduled Person or Organization." The reference to "for use when" does not determine the terms of the coverage afforded, but rather, is an instruction to the underwriting department as a visual aid in putting together the appropriate endorsements that constitute the insurance contract. Lastly, I give the typewritten endorsement more weight than the printed instructions on which U.S. Fire relies. The typewritten statements are a greater reflection of the terms negotiated between the parties and more indicative of the parties' intent. *See JCD Int'l Gem Corp. v. Evanston Ins. Co.*, No. 94 Civ 5315, 1995 U.S. Dist. LEXIS, at *6 (S.D.N.Y. Aug. 5, 1995).

## C. The Watercraft Exclusion is Applicable Here

■ A New York insurer will be relieved of its duty to defend or indemnify when it can demonstrate that the allegations within the complaint fall solely and entirely within the unambiguous language of its policy exclusion. *See 614 Constr. Corp.*, 142 F.Supp.2d at 494 (applying New York insurance law). Generally, exclusionary clauses are to be given their plain and ordinary meaning, however courts are not allowed to construe these exclusionary clauses in such a way that the clauses are drained of their intended meaning. *See Congregation B'Nai Israel*, 900 F.Supp. at 644 (citations omitted). US Fire argues that Weeks is barred from obtaining additional insured coverage due to the "Water-

craft exclusion" found within its policy with C.B.[6] Although it has been held that a regular "12–foot–by–31–foot" barge is considered a "watercraft," *Sloan Steel Erectors & Equip. Rental, Inc. v. Illinois Union Ins. Co.*, 158 A.D.2d 984, 551 N.Y.S.2d 136, 136 (4th Dep't 1990), when determining whether a barge falls within an insurance policy exclusion, the courts in New York will look further to the actual usage of the barge. *See Soil Mechanics Corp. v. Empire Mut. Ins. Co.*, 55 Misc.2d 243, 285 N.Y.S.2d 391 (N.Y.Sup.Ct.1967), *aff'd*, 29 A.D.2d 1052, 290 N.Y.S.2d 1020 (2d Dep't 1968), *aff'd*, 23 N.Y.2d 849, 297 N.Y.S.2d 970, 245 N.E.2d 728 (1969) (concluding that a "raft" or a "float" used to mount soil-boring equipment is not considered a "water craft" for the purposes of an insurance policy exclusion). *Cf. Ison v. Roof*, 698 F.2d 294 (6th Cir.1983) (finding that a barge was not a "watercraft" because the barge was secured to a bank and was not intended to be used for transportation, but held that the barge did not fall under the watercraft exclusion because the barge had been pulled partially on bank). US Fire seeks to have the court adopt the simple conclusion that all barges are "watercrafts." I decline to do so, especially in light of the fact that ambiguities in insurance provisions are to be construed against the insurer. *See Congregation B' Nai Israel*, 900 F.Supp. at 644–45. The barge where the plaintiff's alleged injury occurred was either tied to the bridge or spudded down. (Vosseller Dep. at 46.) Much like a raft or barge that is used to mount soil-boring equipment, *see Soil Mechanics Corp.*, 55 Misc.2d at 243, 285

N.Y.S.2d 391, or that is tied to a bank, *see Ison*, 698 F.2d at 295, the barge's purpose was meant to be a stationary platform and was not meant to be used as a means of transportation. Accordingly, I find that the barge at issue herein was not a "watercraft" within the scope of the policy exclusion and, as such, Weeks is not barred from policy coverage under this exclusion.

### D. *Additional Exclusion Within the OLC*

■ The OLC contains an "Additional Exclusion," stating in pertinent part: "[t]his insurance does not apply to ... 'bodily injury' or 'property damage' arising out of any act or omission of the additional insured(s) or any of their 'employees' other than the general supervision by the additional insured(s) of your ongoing operations performed for the additional insured(s)." (Form CG 20090397, at 1, annexed as Ex. E to Benson Decl.) When a general contractor is found to have violated Section 240(1) of the New York Labor Law, the courts have repeatedly held that such a violation is "conclusive evidence" of negligence that calls for a directed verdict. *See Zimmer*, 65 N.Y.2d at 521, 493 N.Y.S.2d 102, 482 N.E.2d 898; *Major v. Waverly & Ogden, Inc.*, 7 N.Y.2d 332, 334, 197 N.Y.S.2d 165, 165 N.E.2d 181 (1960). Since Weeks violated Section 240(1) of the New York Labor Laws and that violation was a proximate cause of Palanquet's injuries, Weeks' failure to provide adequate safety devices is conclusive evidence of its negligence.

---

**6.** "This insurance does not apply to:
 g. Aircraft, Auto or Watercraft
 'Bodily injury' or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any ... watercraft owned or operated by or rented or loaned to any insured. Use includes operation and 'loading or unloading.'

This exclusion does not apply to:
 (2) A watercraft you do not own that is:
 (a) Less tan 26 feet long; and
 (b) Not being used to carry persons or property for a charge."
(Form CG00010196, at 1, 3, annexed as Ex. E to Benson Decl.)

*See supra* p. 64–67. Although the argument can be made on behalf of Weeks that its supervision of the worksite was "general" in nature, that was not the cause of the plaintiff's injuries. The evidence indicates that Weeks would, at times, set up ladders and also remove ladders if the conditions were unsafe. (Vosseller Dep. at 32, 60) (stating that it was not the job of Weeks' foremen to check the safety conditions "all the time," but if something was apparent, they would take action to fix it. Also stating that on occasion, ladders were "resecured"). Since Palanquet suffered "bodily injury" by the failure of Weeks to provide adequate safety equipment, rendering Weeks statutorily negligent, I find that Weeks' conduct falls within the terms of the "Additional Exclusion" under the OLC. *See 614 Constr. Corp.,* 142 F.Supp.2d at 494. Accordingly, U.S. Fire may deny coverage to Weeks as an additional insured under this exclusion.

### E. *US Fire's Disclaimer was Timely*

Having found that Weeks is not entitled to additional insured coverage under the U.S. Fire general liability coverage issued to C.B. Contracting, I next consider Weeks' claim that U.S. Fire is barred from invoking this exclusion because of its failure to make a "timely disclaimer" and because of the doctrine of estoppel.

 Under New York law, an insurer must notify an insured as "soon as is reasonably possible" of its "intention" to disclaim coverage for bodily injury under a policy. *U.S. Underwriters Ins. Co. v. City Club Hotel, LLC,* 369 F.3d 102, 106–07 (2d Cir.2004) (interpreting and quoting N.Y. Ins. Law § 3420(d)).[7] Reasonableness is measured "from the time when the insurer first learns of the grounds for disclaimer of liability or denial of coverage." *In re Allcity Ins. Co. and Jimenez,* 78 N.Y.2d 1054, 1054, 576 N.Y.S.2d 87, 581 N.E.2d 1342 (1991); *see also Ward v. Corbally, Gartland & Rappleyea,* 207 A.D.2d 342, 615 N.Y.S.2d 430, 431 (2d Dep't 1994) (holding that insurer's two-month delay is untimely as a matter of law). A failure of the insurer to give a notice of disclaimer as soon as reasonably possible after it learns of the accident or the grounds for disclaimer precludes an effective disclaimer of liability. *See Hartford Ins. Co. v. County of Nassau,* 46 N.Y.2d 1028, 1029, 416 N.Y.S.2d 539, 389 N.E.2d 1061 (1979). An insurer, however, must be given reasonable time to perform an adequate, reasonably prompt, thorough, and diligent investigation of the claim. *See City Club Hotel,* 369 F.3d at 109 (holding that a four to five month delay in investigating the terms of the lease was unreasonable as a matter of law). *Cf. Wilczak v. Ruda & Capozzi, Inc.,* 203 A.D.2d 944, 611 N.Y.S.2d 73, 74 (4th Dep't 1994) (reversing summary judgment for insured where it was shown that insurer's delay of two months was the result of investigation regarding coverage).

Weeks claims that by January 14, 2000, the day Weeks sent a copy of C.B.'s subcontract to U.S. Fire, U.S. Fire had knowledge of the facts upon which it could have submitted a formal disclaimer. Weeks as-

---

**7.** New York Insurance Law § 3420(d) states, in pertinent part: "[If] an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of . . . [any] type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant." N.Y. CLS Ins § 3420(d) (2004). *See also First Fin. Ins. Co. v. Jetco Contracting Corp.,* 1 N.Y.3d 64, 68, 769 N.Y.S.2d 459, 801 N.E.2d 835 (2003) (stating that the purpose of section 3420(d) is to protect the claimant by expediting the disclaimer process so that the claimant will not experience any prejudice and will be able to pursue other avenues for defense and indemnification).

serts, however, that U.S. Fire waited until March 22, 2000—sixty days later—to advise Weeks that it could not render a coverage decision because of "unknown factual information of the accident."

Weeks' interpretation of New York Insurance Law § 3420(d) is flawed. Section 3420(d) requires that the insurer give notice as soon as reasonably possible of its "intention" to disclaim or deny coverage. See *City Club Hotel*, 369 F.3d at 109. U.S. Fire would be required to disclaim coverage only if it was contractually obligated to provide additional insured coverage to Weeks. See *Aetna Cas. & Sur. Co. v. Mari*, 102 A.D.2d 772, 476 N.Y.S.2d 910, 912 (1st Dep't 1984) (stating that there is no duty to disclaim where the coverage of the insurance policy does not attach because of the lack of a contractual obligation). Thus, U.S. Fire would be required to provide additional insured coverage to Weeks only if there was an explicit contract between U.S. Fire's insured—C.B. Contracting—and Weeks, requiring the coverage of Weeks as an additional insured. (See Benson Decl. Ex. E.) (typewritten portion of the OLC provision within the general comprehensive liability policy between U.S. Fire and C.B.) That contractual obligation is not present here.

 In its efforts to diligently investigate the matter, U.S. Fire made multiple requests for a copy of the subcontract between Weeks and C.B. (Weeks 56.1 Statement ¶ 7.) Weeks, however, did not respond to these requests until January 14, 2000, and only after U.S. Fire issued a letter on January 3, 2000 of its "intention" to disclaim coverage for Weeks. The January 3, 2000 letter, as opposed to the March 22, 2000 letter, was U.S. Fire's initial showing of its "intent" to disclaim, as required by § 3420(d). At the very most, Weeks' claim is that since it ten-dered its defense to U.S. Fire on August 16, 1999, the approximate eight months it took U.S. Fire to formally disclaim on January 3, 2000 should be unreasonable as a matter of law. See *Hartford Ins. Co.*, 46 N.Y.2d at 1030, 416 N.Y.S.2d 539, 389 N.E.2d 1061 (stating that where there is "absolutely no explanation" for the delay provided by the insurer, a delay of two months is unreasonable as a matter of law). However, Weeks' claim of an unreasonable eight month delay is defeated by U.S. Fire's defense that insurers must be given "adequate and reasonable" time to investigate the accident and grounds for disclaimer. Moreover, such efforts to investigate were barred by Weeks' failure to cooperate. I find there is a reasonable explanation for the delay. Accordingly, U.S. Fire is not barred from relying upon an exclusion for a failure to make a "timely disclaimer."

## F. *US Fire is not Estopped from Denying Coverage to Weeks*

 Weeks also argues that U.S. Fire should be estopped from denying coverage because in the March 22, 2000 correspondence to Weeks, U.S. Fire acknowledged that Weeks was an additional insured. In insurance cases, estoppel will be found to bar the insurer from disclaiming and denying coverage, even to an uninsured, when the insurer: (1) voluntary undertakes the defense of the case, (2) when there is reliance upon this undertaking, and (3) when the insured suffers a detriment by losing the right to control its own defense. See *Albert J. Schiff Assoc., Inc. v. Flack*, 51 N.Y.2d 692, 699, 435 N.Y.S.2d 972, 417 N.E.2d 84 (1980). Although the March 22, 2000 letter stated that Weeks was an additional insured, that letter also mentioned that U.S. Fire could not render coverage at this time but advised Weeks to seek defense from its

own insurance carrier. US Fire never explicitly made a voluntary undertaking to defend Weeks. Moreover, Weeks does not assert any evidence as to its reliance upon an undertaking to defend nor any detriment it suffered. Thus, U.S. Fire is not estopped from denying coverage to Weeks.

Based on the foregoing, U.S. Fire's cross motion for summary judgment declaring that it does not have the duty to defend or indemnify Weeks in the underlying personal injury action is granted on the grounds that Weeks falls within the "Additional Exclusion" clause and U.S. Fire is not barred from relying on this exclusion.[8] Weeks' motion for summary judgment is denied.

## IV. *Severance of the Third Party Action*

 Additionally, U.S. Fire moves to have the third-party complaint severed from the underlying action for liability and damages because of alleged prejudice that may result if these actions are tried together. Federal Rule of Civil Procedure Rule 42(b) states that courts "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to the expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim." Fed. R.Civ.P. 42(b). Severance is a procedural device that is only to be employed in exceptional circumstances and the decision to do so rests within the discretion of the trial court. *See Hartford Fire Ins. Co. v. County Asphalt, Inc.*, No. 01–6176, 2002 WL 31654853, at *3, 2002 U.S. Dist. LEXIS 22572, at *9–10 (S.D.N.Y. Nov. 21, 2002). In deciding whether to sever the claims, the court may consider:

(1) whether the issues sought to be tried separately are significantly different; (2) whether the issues are triable by the jury or the court; (3) whether the posture of discovery as to the respective issues favors separate trials; (4) whether the issues require different proof; and (5) whether the non-movant will be prejudiced by a severance.

*Id.* 2002 WL 31654853, at *3, 2002 U.S. Dist. LEXIS 22572, at *10 (citations omitted). Having found that Palanquet is entitled to summary judgment on the issue of liability and that U.S. Fire is also entitled to summary judgment, the only outstanding issue involves damages, which shall be resolved at a jury trial. Since U.S. Fire has already been absolved of any duty to defend or indemnify, U.S. Fire's motion for severance is moot.

## CONCLUSION

For the foregoing reasons, Palanquet's motion for summary judgment is granted. Weeks' motion for summary judgment is denied. US Fire's cross-motion for summary judgment is granted.

SO ORDERED.

---

**8.** US Fire also seeks to establish that any insurance coverage it would be required to provide to Weeks would only be in "excess" to the primary coverage provided to Weeks from its own carrier. However, since I find that Weeks is not entitled to coverage as an additional insured, it is unnecessary to determine any issue of excess coverage.